Belle Levy, Appellant, v. Johnston & Hunt, a corporation, Appellee.

### Gen. No. 26,386.

1. INTOXICATING LIQUORS—*what constitutes "saloon."* In the United States, prior to the passage of the prohibition legislation, a "saloon" was understood to be a place devoted to the sale at retail and the drinking of intoxicating beverages of various kinds.

2. LANDLORD AND TENANT—*how lease for saloon purposes construed.* In a lease in which it is stipulated that the premises were to be used for "a saloon and sale of wines and liquors and for no

other purpose whatever," the meaning of the word "saloon" should be limited by the associated words used in connection with it.

3. CONTRACTS—*when performance excused because impossible as result of change in domestic law.* As a general rule, performance of a contract is excused where it becomes impossible owing to a change in domestic law after the making of the contract, provided the promisor has not expressly assumed the risk of such change.

4. INTOXICATING LIQUORS—*when lease of building for saloon not binding on lessee.* A lease of a building for "a saloon and sale of wines and liquors and for no other purpose whatever" was not binding upon the lessee after the passage of prohibition legislation making such use of the premises unlawful, and he was justified in abandoning the premises and refusing to pay rent thereafter.

Appeal from the County Court of Cook county; the Hon. THOMAS J. MYERS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed February 14, 1922.

WARD & BALDRIDGE, for appellant.

FELSENTHAL, STRUCKMANN & BERGER, for appellee; A. R. MILLER, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

Plaintiff, who is appellant here, brought suit in the county court of Cook county to recover the amount claimed to be due her under the provisions of a lease to defendant of certain premises which are described as the entire first floor and basement of the building known as Nos. 724 and 726 Milwaukee avenue and 1020 West Huron street in Chicago. Plaintiff is the assignee of the lessor's interest in said lease.

The declaration contained two counts, the first of which sets forth the lease and alleges that prior to its expiration defendant vacated the demised premises and refused to pay rent therefor. Plaintiff sought to recover the stipulated rent of $175 per month for the months of February, March and April, 1920, with interest thereon, and the sum of $14.08, the amount of a

water tax on the premises. The other count consisted of the consolidated common counts and alleged that there was due from defendant the sum of $900. Plaintiff's affidavit, attached to the declaration, stated that "the nature of her demand is rent due upon the lease aforesaid."

Defendant filed a plea of the general issue and a special plea setting forth that the lease sued upon contained, among others, the following provisions with reference to the uses and purposes of the demised premises: "To be occupied for a saloon and sale of wines and liquors and for no other purpose whatever." The plea further avers that on July 1, 1919, in pursuance of an act passed by the United States Congress, it became and was illegal and criminal to sell any intoxicating beverages in the United States during the period of the war then existing between the United States and the German Empire and its allies; also that on January 16, 1920, in pursuance of the Eighteenth Amendment of the United States Constitution, passed by the Congress of the United States and thereafter ratified by the legislatures of the necessary number of States, it became and was illegal and criminal to sell any intoxicating beverages in the United States after January 16, 1920. The plea further avers that during the period from July 1, 1919, to January 16, 1920, the United States continued in a state of war with the German Empire and its allies and that it was illegal and criminal to sell intoxicating beverages during that entire period and that by virtue of the above laws of the United States defendant was prohibited from using the demised premises for the only purpose mentioned in said lease and that defendant was thereby relieved and discharged from all liability to pay rent for said premises.

Plaintiff filed a *similiter* to the first plea and a general demurrer to the special plea. The plea of the general issue was subsequently withdrawn by defend-

ant pursuant to leave of court. The trial court held
that the matters set forth in the special plea consti-
tuted a good defense to the action and overruled the
demurrer thereto. Plaintiff elected to stand by its
demurrer to the plea and thereupon the court entered
judgment in favor of defendant. A reversal is sought
upon the ground that the court erred in overruling
this demurrer. The question is fairly raised by the
pleadings as to whether or not the prohibition legisla-
tion set forth in the special plea, in its effect, relieved
defendant of its obligation under the lease.

It is unnecessary to set forth the provisions of the
lease in detail. It was in the form ordinarily and gen-
erally used in Chicago where premises are rented for
saloon purposes to be used as a place for the sale at
retail and for consumption on the premises of such
alcoholic beverages as beer, wine and liquors and other
intoxicating drinks. It is ordinarily denominated a
"saloon lease." The rent reserved was $175 per
month up to April 30, 1920, and thereafter $200 per
month. The term of the lease was from May 1, 1915,
to April 30, 1925. It contained the usual covenants
on the part of the lessee to keep the premises in re-
pair, to surrender possession at the expiration of the
term and to pay rent and water and gas bills. It was
expressly stipulated that the demised premises were
to be occupied for "a saloon and sale of wines and
liquors *and for no other purpose whatever.*" It also
contained a further provision which is peculiar to
saloon leases and indicates that both parties knew and
intended that the premises would be used as a place
for the retail sale and consumption of intoxicating
liquors. Under this provision the lessee agreed, in
substance, to protect, save harmless and indemnify the
lessor from and against all loss, cost or damage aris-
ing from the use of the premises as a saloon (which
was then generally understood to be a place where
beer, wine and liquors are sold and drunk) and from

the unlawful sale of intoxicating liquors upon the premises. It seems obvious that such a provision would be unnecessary and improper in a lease of premises to be used otherwise than as above indicated.

Much importance is attached by counsel to the meaning of the word "saloon" as used in the lease and it is contended by appellant that notwithstanding the reference in the lease to the use of the demised premises, defendant was still entitled to keep the premises for any purpose within the scope of its corporate objects as enumerated in its certificate of incorporation and that defendant might well have continued after the enactment of the prohibition legislation to keep the said premises as a place for the sale of groceries, ice cream or nonintoxicating beverages or as a restaurant or billiard hall. In support of this contention appellant relies upon the case of *Brewer & Hofmann Brewing Co. v. Boddie*, 181 Ill. 623. In that case it was held that a lease of premises for "saloon" purposes entered into by a corporation authorized to manufacture and sell soda water is not void so as to preclude the collection of rent, although the corporation sells intoxicating liquors on the premises in excess of its chartered powers. The brewing company relied upon the defense that the lease in question was *ultra vires* the corporation. This lease stipulated that the demised premises were "to be occupied for a saloon and no other purpose whatever," and the court properly held that the use of the word "saloon" did not preclude defendant from using the premises as a place to manufacture and sell soda water, in view of the fact that the defendant corporation was authorized to transact such business and was not authorized to sell intoxicating liquors. In other words, the mere fact that defendant had engaged in the unauthorized business of retailing intoxicating liquors did not relieve it of its obligation to pay rent. A consideration of the words used in the present lease leads to the conclu-

sion that the above authority is not applicable to the case at bar. In the present lease it was stipulated that the demised premises were to be used for "a saloon and sale of wines and liquors and for no other purpose whatever." These were the only purposes for which the demised premises could be used under the lease. The sale of intoxicating liquors was not merely incidental to the transaction of defendant's business, as in the case of *Brewer & Hofmann Brewing Co. v. Boddie, supra.* It is true, as stated by the court in that case, that "there may be many different kinds of saloons." A saloon may be a large room used for social events, musicales, art displays or public entertainment. It may be the main cabin of a steamship used for carrying passengers. A dining room is sometimes called a dining saloon. However, in the United States, prior to the passage of the prohibition legislation mentioned in the pleadings herein, a saloon was understood to be a place devoted to the sale at retail and the drinking of intoxicating beverages of various kinds. Such was the accepted meaning of the word. Century Dictionary, p. 5313. This word in the present lease was followed by the words "and sale of wines and liquors," which we regard as supplementary to and descriptive of the preceding word "saloon." The meaning of the word "saloon" should be limited by the associated words used in connection with it. *Street v. Lincoln Safe Deposit Co.,* 254 U. S. 88; *Jensen v. State,* 60 Wis. 582; *Blake v. Blake,* 75 Wis. 339.

Impossibility of performance due to the intervention of domestic legislation has been held to be a good defense in actions arising fom a failure to fulfill the obligations of a contract in many instances prior to the existence of the present prohibition laws. As a general rule, performance is excused where it becomes impossible owing to a change in domestic law after the making of a contract, provided the promisor has not expressly assumed the risk of such change. *Adler v.*

*Miles,* 69 N. Y. Misc. 601, 126 N. Y. Supp. 135; *Thomas v. Hartshorne,* 45 N. J. Eq. 215; *Baylies v. Fettyplace,* 7 Mass. 325; *Cordes v. Miller,* 39 Mich. 581.. This rule had its origin in the case of *Brewster v. Kitchell,* 1 Salk. 198. It was discussed and applied in the later case of *Baily v. DeCrespigny,* L. R. 4 Q. B. 180, wherein the defendant was charged with having violated the covenant of a lease whereby it was agreed that during the demised term he would not permit any structure to be erected on a certain paddock fronting the demised premises, and it was alleged, as breaches of this covenant, that the defendant had permitted a railway station to be built on the paddock and that he had assigned the paddock to the railway company which had erected the said station. It was alleged by way of defense that after the making of the lease the railway company was empowered to take the paddock under an act of Parliament for the purpose of building a railway station. It was held that defendant was discharged from his covenant by the subsequent act of Parliament, which compelled him to assign to the railway company, thereby putting it out of his power to perform the covenant. This rule has been generally followed. It has been held also that where the event which is set up by way of defense is of such a character that it cannot be reasonably supposed to have been in the contemplation of the contracting parties at the time when the contract was made, they will not be bound by words which were not used with reference to the possibility of the particular contingency which afterwards happens. *Chicago, M. & St. P. Ry. Co. v. Hoyt,* 149 U. S. 1. It would be unjust if the law should hold a promisor liable for failing to perform the promised act after the law itself had prohibited its performance, provided at the time of the contract the undertaking was legal, "and it may be said broadly that where the law forbids or prevents the performance of a promise, legal when made, the

promisor is freed from liability.'' 3 Williston on Contracts, 1938, and cases cited in support of the text. Since the enactment of the prohibition legislation a number of cases have arisen involving the question now under consideration in which it has been held that the tenant was justified in terminating a lease of property which the parties intended to be used as a saloon. *Heart v. East Tennessee Brewing Co.,* 121 Tenn. 69; *Stratford, Inc. v. Seattle Brewing & Malting Co.,* 94 Wash. 125. The court said in the Tennessee case that it was unnecessary to determine whether the lease restricted the use of the property to the sale of liquor; it was enough that it was the purpose to do so. It has also been held in a number of cases that in order to justify a tenant in terminating a lease under such circumstances as are involved herein, it must appear that the use for which the premises were leased is limited solely to the maintenance of a saloon. *Greil Bros. Co. v. Mabson,* 179 Ala. 444; *Kahn v. Wilhelm,* 118 Ark. 239; *Hooper v. Mueller,* 158 Mich. 595. In the case of *McCullough Realty Co. v. Laemmle Film Service,* 181 Iowa 594, where the lease provided that ''the premises are leased for film exchange and film and theater supply purposes only, and are not to be used for any unlawful or offensive purposes whatever,'' the tenant was held justified in vacating the premises and refusing to pay rent when a city ordinance made it illegal to store or handle inflammable films in a building which was not fireproof. This rule was announced, although it was not impossible for the tenant to have used the demised premises for office purposes and to have stored the films elsewhere. Counsel for appellants cite in their reply brief a number of those cases to which we have referred for the purpose of showing that even though the use of the premises is restricted to saloon purposes, the tenant has been held bound to continue in the performance of his covenants. A review of

these cases will show that they were based upon the same rule which was held applicable by our Supreme Court in the case of *Brewer & Hofmann Brewing Co. v. Boddie, supra,* that nonintoxicating drinks and other articles of merchandise might be sold upon the demised premises. These authorities apply only in cases where the lease does not restrict the use of the premises to a single purpose. 7 A. L. R. 836. As already indicated, the lease involved in this case is not susceptible of that construction. The view which we have expressed as to the meaning to be given to the word ''saloon'' in this case is sustained by *Greil Bros. Co. v. Mabson, supra,* in which it was held that a lease of certain premises to be occupied as ''a bar and not otherwise'' necessarily required the sale of intoxicants, and upon the enactment of prohibition legislation the lessee was held excused from the performance of the covenants.

We are of the opinion that the judgment of the county court was correct in overruling the demurrer to the special plea in this case.

The judgment of the county court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.