## Warshawsky v. American Automotive Products Co.

### Gen. No. 46,793.

First District, Second Division.
November 27, 1956.
Released for publication January 8, 1957.

 

Sidney J. Goldstein and Charles A. Greenstein, both of Chicago, for appellant.

McKay & Krulewitch, of Chicago, for appellee; Dwight McKay and H. B. Krulewitch, both of Chicago, of counsel.

JUDGE SCHWARTZ delivered the opinion of the court.

Plaintiff obtained judgment by confession for rent due for the month of May 1955 pursuant to a lease executed February 23, 1954 for a term expiring April 30, 1957. Defendant moved to vacate the judgment and in support thereof filed its verified petition. The court sustained plaintiff's contention that the petition did not set up a meritorious defense to the judgment and denied the motion. From this order defendant appeals. The premises and the use thereof are described and stated in the lease as:

"The one story brick garage building known as numbers 11–15 West Cullerton Street, to be occupied for manufacturing, assembling and shipping of automotive parts, and for no other purpose whatsoever."

The question involved is whether the use of the premises as set forth in the lease is contrary to the zoning ordinance and if so whether this is a defense to an action for rent. In this latter respect it is a matter of first impression in Illinois.

In its petition defendant alleges that it was contemplated by the parties that the lessee, being engaged in the business of manufacturing automotive parts, including bearings and housings, and using heavy machinery therefor, would use the premises for that purpose. The district was zoned for commercial use

which, it is alleged, does not permit the operations engaged in by defendant (Chicago Mun. Code, Ch. 194A—11). Defendant alleges it did not know this until March 4, 1955, when a city building inspector or attorney notified defendant that the use being made of the premises violated the zoning ordinance. Defendant, without waiting for any formal notice or other action by the city, vacated the premises April 30, 1955 and tendered possession to plaintiff. On June 6, 1955, more than a month after defendant had vacated the premises, it received a written notice of violation from the city. The petition alleges that plaintiff "knew or should have known" that the use to be made of the premises would violate the zoning ordinance.

Plaintiff's answer is that under the zoning ordinances uses could be made of the premises which would constitute permissible uses under the terms of the lease, that there has been no judicial determination that the uses which were made by defendant of the property were in violation of the zoning ordinance and that a lease is not invalidated because one of the uses defined is prohibited by statute or ordinance.

The lease restricts the use of the premises to "the manufacturing, assembling and shipping of automotive parts, and for no other purpose whatsoever." The zoning ordinance permits limited manufacturing in a commercial district where the operations are carried on within a building and in a manner not injurious to adjacent premises. (Chicago Mun. Code, Ch. 194A—11.) So far as it appears relevant to the present case uses are permitted in a commercial district as follows:

(a) Assembling or storage of electrical appliances, radios and phonographs;

(d) Manufacturing, processing, assembling or storing of clay or glass products, provided that kiln ca-

pacity does not exceed 200 cubic feet and the kiln is fired only by oil, gas or electricity;

(e) Manufacturing, processing or storing of merchandise from the following finished products: bone, celluloid, cloth, cork, feathers, felt, fibre or paper, fur, hair, horn, leather, precious or semi-precious metals, precious or semi-precious stones, rubber, shell, yarns.

■ Defendant avers that "automotive parts" is a technological term which is to be distinguished from automotive accessories and that automotive parts are those parts which are an integral or component part of an automobile. It cites a case construing the federal excise tax—Universal Battery Co. v. United States, 281 U. S. 580, 50 S. Ct. 442, 74 L. Ed. 1051. There the word "part" was construed as meaning an article designed or manufactured for the special purpose of being used as a component part of an automobile and "is not such a commercial article as ordinarily would be sold for general use, but is primarily adapted for use as a component part of such vehicle." An accessory "is designed to be used in connection with such vehicle to add to its utility or ornamentation." Other definitions are given which for our purpose are not relevant. Even if we adopt this distinction, it is obvious that many automotive parts such as glass products, cloth and fibre may be made in a district zoned for commercial usage.

The petition avers that it was contemplated by the parties that the lessee "being engaged in business as a manufacturer of automotive parts, including bearings and housings among other things, and using heavy production machinery in the manufacturing processes, would use the demised premises for said purposes . . ." and that the defendant entered into possession of the premises and continued to manufacture the articles in question until advised by the building inspector on March 4, 1955, that this was illegal. It is

averred that the lessor "knew or should have known" that the premises were zoned as hereinbefore described and that such zoning prohibited the manufacture of automotive parts and that defendant had no knowledge that this would be in violation of the zoning ordinance. In an amendment to the petition it is also averred that the proposed use was known to lessor at the time of entering into the lease. The lease purports to be and is a definitive contract setting forth all the covenants and agreements of the parties. The averments of the petition do not state facts or circumstances which would warrant the court's restricting the term "automotive parts" to a meaning narrower than that set forth in the lease. Taking the words as used in the lease and accepting the distinction between automotive accessories and automotive parts, uses could still be made of the premises within the zoning ordinance. Even if we were to hold otherwise, we are of the opinion that the allegation in the petition that plaintiff knew that the proposed usage was in violation of the zoning law is not sufficient to bar recovery of rent, and this we will now consider.

The charge in the petition is that plaintiff knew that the use contemplated was in violation of the zoning law and that defendant did not know this. We must assume that defendant knew the law. Kazwell v. Reynolds, 250 Ill. App. 174. In that case the plaintiff sought to have a contract for the purchase of land declared void on the ground that the defendant knew that the plaintiff intended to use the real estate as a sandwich shop or restaurant and that it was represented to him that there were no restrictions on the premises except those appearing of record. After making the contract the plaintiff discovered that a zoning ordinance prohibited the use of the property for the purpose intended. The court held that it would presume that both parties knew the law and if the

183

lessee did not, then the execution of the contract was a mistake of law and no relief could be given him. If in the instant case both parties are presumed to have known that the proposed usage was contrary to the zoning ordinance, then the only conceivable legiti-mate reason for execution of the lease by defendant was the belief on its part that operation of the prem-ises could be brought within the law or a variation obtained or a proper showing made that as to this property such usage should be permitted. This could well be the case where zoning is involved because variations frequently are obtained either by amend-ment, by proceedings before the proper board, or by a judicial proceeding to determine the validity of the ordinance as to the particular property involved.

 In respect to the allowance of variations from their prescribed terms zoning laws are unique. Gorieb v. Fox, 274 U. S. 603; Robinson v. Town Council of Narragansett, 60 R. I. 422, 199 Atl. 308 (1938); Bran-don v. Board of Comm'rs, 124 N. J. 135, 11 A.2d 304; American Smelting & Refining Co. v. City of Chicago, 347 Ill. App. 32. In Gorieb v. Fox, supra, the Supreme Court of the United States rejected the argument that the power to grant exceptions violated the 14th amend-ment and held that an inflexible application of the zoning ordinance could result in unnecessary hard-ship; that it was not possible to anticipate and provide specific terms for every exceptional case, and then said (at p. 607):

"And yet the inclusion of such cases may well result in great and needless hardship, entirely disproportionate to the good which will result from a literal enforce-ment of the general rule. Hence the wisdom and neces-sity here of reserving the authority to determine whether, in specific cases of need, exceptions may be made without subverting the general purposes of the ordinance. . . ."

184

In Robinson v. Town Council of Narragansett, supra, the court said that such ordinances are full of details, and even when drawn with the greatest care, cannot prescribe what ought to be done in exceptional cases. For that reason it was proper to create a board of review with power to make exceptions so that an individual will not be deprived of his property or subjected to unnecessary or unreasonable hardship. In American Smelting & Refining Co. v. City of Chicago, supra, we said:

"The zoning law has an aspect differentiating it from other laws or ordinances passed in the exercise of police power. Such laws as a rule contain within themselves adequate specifications to make them applicable to all. They are either constitutional or not as to all. A zoning ordinance, on the other hand, may be unconstitutional as to a particular piece of property when it appears that its application to that property does not bear a reasonable relationship to the police power. This is, indeed, a condition of its validity."

That in this community ample use is made of this right to obtain variations is well established by the history of zoning litigation and by the many cases decided by our courts holding invalid the application of a zoning ordinance to a particular situation. We conclude on this phase of the case that the lease does not restrict the premises to an illegal use and does not show that the parties contemplated an illegal use.

██ There are cases holding that even if a lease does not restrict the premises to an illegal use, the lessor's right to recover rent may be defeated if he has knowingly participated in a plan to make an illegal use of his property. The cases in which this has been applied are those where statutory provision made it a criminal offense *knowingly to lease* for certain illegal uses. In other words, the act of leasing with knowl-

edge is the offense proscribed. Thus, in Fields v. Brown, 188 Ill. 111, recovery of rent was denied where the premises were leased with the knowledge that they would be used for the maintenance of a house of prostitution, in violation of Ch. 38, Sec. 162, Ill. Rev. Stat. 1955. In Harris v. McDonald, 194 Ill. 75, recovery of rent was denied where premises were leased with the lessor's knowledge that they would be used for gambling purposes, in violation of Ch. 38, Secs. 325, 333, Ill. Rev. Stat. 1955. Other statutory provisions provide that leases shall be invalid where the use of the property is intended for obscene exhibitions (Ch. 38, Sec. 470, Ill. Rev. Stat. 1955) or for the purpose of receiving tips (Ch. 38, Sec. 551, Ill. Rev. Stat. 1955).

That courts distinguish between cases in which the statute makes it a criminal offense to *lease* premises for a particular use and cases in which the use contemplated but not the leasing is unlawful is revealed by Hoefeld v. Ozello, 290 Ill. 147. There the question involved was whether a provision with reference to terminating the lease of premises for a saloon in the event the state Sunday-closing law was enforced rendered the whole lease void because it contemplated a violation of the state law against opening saloons on Sunday. No state law prohibited the leasing, however, as in the case of prostitution, gambling, obscene exhibitions and receiving tips. The plaintiff offered proof that prior to the leasing the lessee had informed the lessor of his intention to keep the place open on Sunday. The court held that mere knowledge of unlawful use will not defeat recovery of rent.

Recovery of the price of goods sold has been denied where the act of sale or the method thereof was in itself a violation of a law passed for the protection of the public and providing for a penalty. Thus in Ideal

186

Bldg. Material Co. v. Benson Concrete Co., 273 Ill. App. 519, the plaintiff was denied recovery for goods sold by weights that had not been sealed by the city sealer as required by ordinance. To the same effect is Western Cold Storage Co. v. Estate of Joseph Kaufman, 204 Ill. App. 477, where recovery for storage of decayed potatoes, in violation of an ordinance, was denied. Our courts have in some cases held that failure to obtain a permit before proceeding with work under a contract for the construction of a building or the installation of a tank was a bar to recovery. Bairstow v. Northwestern University, 287 Ill. App. 424, 5 N.E.2d 269; American Tank & Installation Co. v. Rudolph Wurlitzer Co., 254 Ill. App. 514. In these cases the act upon which suit was predicated was a violation of the law—selling goods by unsealed weights, selling decayed potatoes, or doing construction work without a permit. These cases are analagous to those we have cited previously, in which the act of leasing premises for gambling or obscene exhibitions is invalid under the statute.

In the instant case lessor violated no law by making the lease. She bargained for the leasing of the premises with a lessee who was to pay a stipulated sum therefor. Lessee could comply with his covenant to pay the rent without violating any law. The only basis upon which an illegal act could be charged to lessor, as we have previously stated, would be the making of a lease prohibited by law, and no law prohibits a *lease* of premises for the purposes stated.

■■ Defendant has cited a number of cases where impossibility of performance has been held to bar recovery. These are distinguishable from the instant case. In Levy v. Johnston & Hunt, 224 Ill. App. 300, cited by defendant, the premises leased were to be used for a saloon. However, the prohibition law made usage

187

for that purpose illegal. The court sustained the defense on the ground that as "a general rule, performance is excused where it becomes impossible owing to a change in domestic law after the making of a contract, provided the promisor has not expressly assumed the risk of such change. Adler v. Miles, 69 N. Y. Misc. 601, 126 N. Y. Supp. 135; Thomas v. Hartshorne, 45 N. J. Eq. 215; Baylies v. Fettyplace, 7 Mass. 325; Cordes v. Miller, 39 Mich. 581." The court based its decision on impossibility of performance but, as we have stated, the primary promise of a lessee is to pay rent, and there is nothing legally impossible about that. Later authorities used the more suitable phrase "commercial frustration" instead of impossibility of performance. Williston on Contracts, Rev. Ed. Secs. 1954–55; Restatement of Contracts, Sec. 288. The general rule is that performance of a contract is not excused because subsequent and unanticipated events have deprived it of its value, even though the subsequent event is an act of legislation. Deibler v. Bernard Bros. Inc., 385 Ill. 610; Leonard v. Autocar Sales & Service, 392 Ill. 182. The doctrine of commercial frustration is an exception to that rule. That doctrine is not applicable here because the zoning ordinance in question was in existence at the time of the making of the lease. Zoning ordinances, as a rule, except existing uses made at the time of their passage. In the present case if there was any illegality, it existed at the time the lease was executed.

In our opinion the question under consideration is more nearly analagous to those cases in which a lease is restricted to a use legal in itself but with respect to which the law requires a license or permit. In such case it is generally held that it will be presumed the parties contemplated that a license would be obtained and if in fact the license is refused, the

188

lessee is held to have executed the lease with an awareness of the existing law and to have assumed the risk of refusal. Shedlinsky v. Budweiser Brewing Co., 163 N. Y. 437, 57 N. E. 620; Raner v. Goldberg, 244 N. Y. 438, 155 N. E. 733; Gaston v. Gordon, 208 Mass. 265, 94 N. E. 307; Burgett v. Loeb, 43 Ind. App. 657, 88 N. E. 346; Burke v. San Francisco Breweries, 21 Cal. App. 198, 131 Pac. 83; Nussenbaum v. Chambers & Chambers, Inc., 322 Mass. 419, 77 N.E.2d 780 (1948). That the principle is applicable to situations such as the one before us was recognized in Friedman Realty Co. v. DeStefan, 220 App. Div. 661, 222 N. Y. Supp. 371; Stockburger v. Dolan, 14 Cal.2d 313, 94 P.2d 33; Say-Phil Realty Corp. v. DeLignemare, 131 Misc. 827, 228 N. Y. Supp. 365 (Mun. Ct.).

Certain decisions of the lower New York Courts cited by defendant seem to be out of harmony with Friedman Realty Co. v. DeStefan, supra, but are distinguishable. Insofar as there is any conflict, we prefer the reasoning in the Friedman case.

Our conclusion is that the court properly denied defendant's motion to vacate the judgment.

Judgment affirmed.

ROBSON, P. J. and McCORMICK, J., concur.