SCHWARTZ, A., Senior Judge.
 

 The lessor of commercial space in the City of Sanford appeals from an adverse summary judgment in an action for unpaid rent against the guarantor of the tenant’s obligations under the lease. The trial court based its decision on the conclusion that the lease was invalid for lack of consideration because, under the city’s zoning and use regulations, the premises could not be legally employed for a check cashing facility, the only purpose both sides knew it was intended. We affirm but for the very different (and very inconsistent) reason that the lessee properly invoked a cancellation clause in the lease which applied when and if the zoning proved unavailable.
 

 I
 

 The facts are essentially undisputed. On May 16, 2007 the parties entered into the agreement in question for the sole use, as specifically provided, for the tenant’s operation as a “cash advance” store. Because both parties were also aware at least of the real possibility that the city would not allow that use, on August 13, 2007, they entered into a lease amendment which made the tenant “solely responsible for confirming the zoning ... is compatible with the [the tenant’s] use” and which contained, among others, the following termination provision:
 

 1.
 
 Right to Terminate Lease.
 

 In the event Tenant, after using best efforts, is unable to obtain all permits and approvals necessary for Tenant to open and operate its business in the Premises within ninety (90) days from the mutual execution of this Lease, Tenant shall have the right, upon written notice to Landlord, to terminate the Lease, in which event all rents and deposits paid to Landlord shall be refunded to Tenant provided, however, that
 
 *537
 
 Landlord shall have the right on behalf of Tenant to attempt to obtain all permits and approvals for Tenant and if Landlord is unsuccessful, then Tenant shall have the right to terminate the Lease.
 
 [1]
 

 Sure enough, the tenant soon learned that it could not operate the business unless the city granted both a conditional use permit (CUP) and a “distance waiver” concerning a nearby potential competitor. On November 7 (86 days after the lease amendment was executed), the city informed it that after receiving the respective applications, “[t]he distance waiver takes about 30-60 days and the Conditional Use takes about 60 to 90 days.” The lessee duly submitted a CUP application two days later, on November 9. On January 14, 2008, however, Sanford denied the lessee’s CUP application, thus finally preventing it from operating the business on the premises. The following day, January 15, 2008, the tenant notified the lessor that, pursuant to the “90 day” clause, it was terminating the lease, which would have otherwise commenced on January 20, and requested a refund of its security deposit. The appellant responded that the lessee had failed to terminate within ninety days of
 
 executing the lease,
 
 as it said was required, and denied the claim on that ground.
 
 [2]
 
 In accordance with these respective positions, the tenant did not enter into possession of the space and paid no rent, which the landlord then brought this suit to recover.
 

 II
 

 As we have indicated, this case arises from the trial court’s ruling, on cross motions for summary judgment, that the lease was void for “want of consideration” or, to use the legally equivalent term, “frustration of purpose,” because, as all agree, the space could not be used for its only intended purpose. We conclude that this ruling was legally incorrect but, relying on the tipsy coachman rule, see
 
 Robertson v. State,
 
 829 So.2d 901, 906-07 (Fla.2002),
 
 [3]
 
 and because the trial court was also wrong in rejecting, as it did, the tenant’s alternative argument that it had timely invoked the ninety day termination provision, the judgment will be affirmed.
 

 The “lack of consideration” doctrine, which arises when the very purpose of an agreement has been totally frustrated by some outside force or circumstance is a familiar one indeed. See e.g.
 
 Marks v. Fields,
 
 160 Fla. 789, 36 So.2d 612 (1948);
 
 La Rosa Del Monte Express, Inc. v. G.S.W. Enterprises Corp.,
 
 483 So.2d 472 (Fla. 3d DCA 1986). But it has no proper application in a case such as this one, in which the particular potential obstacle was not only foreseen by the parties, but as to which they specifically bargained, with the
 
 *538
 
 risks of its occurrence divided by and between the parties in the agreement itself. See, e.g.,
 
 Shore Inv. Co. v. Hotel Trinidad, Inc.,
 
 158 Fla. 682, 29 So.2d 696, 697 (1947) (finding frustration of purpose doctrine inapplicable where knowledge of pertinent facts was available to promisor and promi-sor was responsible for the predicament);
 
 Home Design Center
 
 —Joint
 
 Venture v. County Appliances of Naples, Inc.,
 
 563 So.2d 767, 769-70 (Fla. 2d DCA 1990) (noting that even under increasingly broad interpretations of frustration doctrine, “the defense is not available concerning difficulties which could reasonably have been foreseen by the promisor at the creation of the contract.”);
 
 Equitrac Corp. v. Kenny, Nachwalter & Seymour, P.A.,
 
 493 So.2d 548 (Fla. 3d DCA 1986) (“It appears without material dispute that the purpose for which the subject contract was formed became entirely frustrated under the circumstances of this case due to no fault of either party.”);
 
 Valencia Ctr., Inc. v. Publix Super Markets, Inc.,
 
 464 So.2d 1267, 1269 (Fla. 3d DCA 1985) (“The doctrine of commercial frustration is limited to cases where performance is possible but an alleged frustration, which was not foreseeable, totally or nearly totally destroyed the purpose of the agreement.”); see generally Restatement (Second) of Contracts § 266 (1981).
 

 In the particular situation presented by this case, the provision of the lease which required the tenant to attempt to obviate any zoning difficulties and provided specific remedies when they could not, requires an application of the exception to rather than the general rule of frustration of purpose. As is said in Erwin S. Barbre, Annotation, Rights Between Landlord and Tenant as Affected by Zoning Regulations Restricting Contemplated Use of Premises, 37 A.L.R.3d 1018 (1971) (cases collected):
 

 many courts have held or recognized that the parties themselves may provide in the lease for the determination of their rights in the event that the contemplated use of the premises is prohibited by a zoning regulation, as long as the lease provision does not violate public policy. The courts are apparently willing to give the parties a wide degree of latitude regarding a contractual determination of their rights.... A provision in the lease regarding the rights of the parties in the event that the use is found to violate the zoning regulations may also be important where the court is faced with the question of whether there has been a failure of consideration, since such a question is said to depend upon the intent of the parties at the time of the execution of the lease. (e.s.)
 

 (Footnotes omitted); see, e.g.,
 
 Margolis v. Malesky,
 
 515 So.2d 425 (Fla. 4th DCA 1987) (landlord entitled to judgment where lease required tenants to obtain zoning approval for proposed use and tenants contemplated alternate use if zoning denied).
 

 Closely on point is
 
 East Coast Advertising, Inc. v. Wiseheart,
 
 862 So.2d 734 (Fla. 3d DCA 2003), which affirmed a summary judgment for a landlord in an action for rent under a lease for use as a billboard. The lessee defended on the ground of failure of consideration because existing zoning regulations prevented that use. The trial court concluded that the defense was unavailable because:
 

 the parties — most importantly the lessees, which were in the billboard business — (a) knew of the existing zoning deficiencies; (b) specifically bargained on that basis with the expectation that the lessees would see that the restrictions were removed; and (c) specifically
 
 *539
 
 eliminated
 
 [4]
 
 a clause in the proposed lease which would have permitted the lessees to escape from its provisions if they were unable to use the property as contemplated.
 

 Id.
 
 (footnote inserted). The Third District wisely agreed and affirmed the summary judgment for the full amount of unpaid rent. We follow that decision here.
 

 Ill
 

 Ironically enough, however
 
 Wiseheart
 
 shows both the reasons why the trial court’s legal determination was not correct and why its ultimate conclusion was. This is because the parties did
 
 not,
 
 as in
 
 Wiseh-eart,
 
 “specifically eliminate! ],” but instead specifically inserted “a clause in the ... lease ... permitting] the lessees to escape from its provisions if they were unable to use the property as contemplated.”
 
 Id.
 
 at 735. To reiterate, that clause provided:
 

 In the event Tenant, after using best efforts, is unable to obtain all permits and approvals necessary for Tenant to open and operate its business in the Premises within ninety (90) days from the mutual execution of this Lease, Tenant shall have the right, upon written notice to Landlord, to terminate the Lease....
 

 We find that the tenant properly and timely invoked this provision, when a day after it found that its attempts to secure appropriate zoning had failed, and before the term of the lease even commenced, it gave notice of the contemplated termination. In the language of this provision, it is clear that having used its “best efforts” the tenant was unable to open and operate its business on November 11, 2007, ninety days from the execution of the amendment on August 13, 2007. The landlord argued and the trial court agreed, however, that the notice was fatally tardy because the cancellation did not occur within the ninety day period. For several reasons this conclusion is incorrect:
 

 1. Foremost, that is not what the lease says. Its clear language, reinforced by the comma inserted after the word “lease,” shows that the ninety day post-lease period refers to the lessee’s ability to lawfully conduct its business on the premises — and
 
 not
 
 as, the appellant says, to its ability to terminate the lease. While the parties could have provided that if they wished, they did not do. See, e.g.,
 
 United Artists Theatre Circuit, Inc. v. Sun Plaza Enterprise Corp.,
 
 1998 WL 938732 (E.D.N.Y.1998) (“If the Tenant will not be considered as a bankable Tenant by any lending institution and/or the Landlord will
 
 *540
 
 not be able to secure a construction loan based on this Lease, and, in that event, the
 
 Landlord shall have the right, only within the period of 90 days after the execution of this Lease, to cancel this Lease,
 
 provided the Landlord used his best efforts to secure financing.”) [e.s.];
 
 Commonwealth v. Vartan, 557
 
 Pa. 390, 733 A.2d 1258, 1260 (1999) (“If within 60 days from the execution of this Lease Tenant has not received such resolutions, enactments or other approvals as Tenant, in its sole opinion, deems appropriate, Tenant shall have the right, exercised
 
 n[sic] writing not later than five business days after the end of such 60 day period,
 
 to terminate this Lease by written notice to Landlord ... ”) [e.s.];
 
 Grossman v. Sharp Air Freight Servs., Inc.,
 
 1994 WL 902889 (Mass.Sup.1994) (“If, notwithstanding such diligent efforts, [Sharp] is unable to obtain such approval on or before sixty (60) days following the execution of this lease, [Sharp] shall have the option to terminate this lease; provided,
 
 however, that such option shall be exercised (if at all) by notice to [the Grossmans]
 
 not later than seventy (70) days following the date of execution of this lease.”) [e.s.]. The contrast between the contract terms in these cases and this one is decisive.
 

 2. Displaying a horrible, the landlord contends that our interpretation would set no time limits to cancellation, and thus give the tenant eternity to do so. This claim is also inaccurate. The law is clear in Florida and elsewhere, that when a contract fails to specify a particular period, the law implies a reasonable time under the circumstances. See
 
 A.I.C. Trading Corp. v. Susman,
 
 40 So.3d 769 (Fla. 3d DCA 2010) (and cited cases);
 
 Four Asteria Realty, LLC v. BCP Bank of North America,
 
 880 N.Y.S.2d 872, 872 (N.Y.Sup.2009) (finding that termination provision, which stated if “Tenant does not receive within thirty (30) days from execution of this Lease Agreement approval ... Tenant may withdraw from this lease,” did not specify time for terminating and thus law would imply a reasonable time), aff'd, 71 A.D.3d 822, 897 N.Y.S.2d 487 (N.Y.A.D.2010). Here, there is no doubt and even the appellant does not contend otherwise, that the tenant terminated within a reasonable time — one day after it knew the property could not be used as intended and five days before the lease even began.
 

 3. Finally, the landlord’s position on this point makes little sense in the real world in which the parties found themselves. Under its view, the tenant would have to have terminated on or before ninety days after the addendum was executed. On that date, however, the application for zoning was
 
 still
 
 pending and it would have had to abandon its reasonable efforts to secure the ability to use the premises as both parties devoutly wished. We will not infer that they intended such a self-defeating result.
 

 Affirmed.
 

 EYANDER and JACOBUS, JJ., concur.
 

 [1]
 

 . We have omitted a separate, so called "60 day” termination clause which applied when government action prevented the “continuation” of the lessee's business. Although the tenant attempted to comply with this provision as well, our holding makes it unnecessary to resolve the conflicting arguments as to whether it could ever apply to a situation in which the tenant's business never began. (We tend to believe, however, that it could and does not.)
 

 [2]
 

 . The lessee later also attempted to comply with the "60 day” clause. See note 1, supra.
 

 [3]
 

 .Although on his own turf, the writer has sought to modernize this hoary expression into the "drunken cabbie” doctrine, see
 
 Tubbs v. State,
 
 897 So.2d 520, 523 (Fla. 3d DCA 2005), he does not feel comfortable, as a visitor to the Fifth District, to attempt such a monumental change in another court’s established jurisprudential nomenclature. See
 
 Foss v. State,
 
 24 So.3d 1275, 1276-1277 (Fla. 5th DCA 2009) (applying "tipsy coachman” rule);
 
 Sullivan v. State,
 
 913 So.2d 762 (Fla. 5th DCA 2005) (same).
 

 [4]
 

 . In support of its conclusion
 
 Wiseheart,
 
 862 So.2d at 735 says:
 

 See
 
 Shore Inv. Co. v. Hotel Trinidad, Inc.,
 
 158 Fla. 682, 683, 29 So.2d 696, 697 (1947)("[I]f knowledge of the facts making performance impossible were available to the promisor, he cannot invoke them as a defense to performance.”);
 
 Sarasota-Manatee Airport Auth. v. Racing Wheels, Inc.,
 
 5 B.R. 309, 313 (Bankr.M.D.Fla.1980)(“The [lessee]'s third defense of economic frustration is equally without merit for not only was the risk of failing to procure the necessary zoning changes foreseeable, it was clearly contemplated by the parties and the failure to make provision in the lease agreement for a denial of the zoning change indicates an assumption of such risk on the part of the [lessee].”);
 
 Rosique v. Windley Cove, Ltd.,
 
 542 So.2d 1014 (Fla. 3d DCA 1989)(recision reversed when parties agreed to "take their chances” that existing building restrictions would be lifted);
 
 Caidin v. Poley,
 
 313 So.2d 88 (Fla. 4th DCA 1975); see also
 
 Warshawsky v. American Auto. Prods. Co.,
 
 12 Ill.App.2d 178, 138 N.E.2d 816 (1956);
 
 Sachs Steel & Supply Co. v. St. Louis Auto Parts & Salvage Co.,
 
 322 S.W.2d 183 (Mo.App.1959);
 
 Schlesinger v. Levine,
 
 28 Misc.2d 654, 212 N.Y.S.2d 904 (N.Y.Sup.Ct.1961). Compare
 
 Marks,
 
 160 Fla. at 789, 36 So.2d at 612 (contrary dictum in case in which neither party knew of zoning restrictions).