**MERRY HOMES, INC., Appellant,**

v.

**CHI HUNG LUU, Appellee.**

**No. 01–09–00187–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 18, 2010.

Ben A. Baring Jr., De Lange, Hudspeth, McConnell & Tibbets, L.L.P., Houston, TX, Jennifer M. Dean, Law Office of Jennifer M. Dean, Kerrville, TX, for Appellant.

John S. Fason, Fason & Associates, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices BLAND and MASSENGALE.

**OPINION**

JANE BLAND, Justice.

In this commercial lease dispute, we determine whether a landlord may enforce a lease to operate a "nightclub or bar" and for "no other" purpose when the tenant cannot legally obtain a liquor license for the leased premises and the lease requires that any activity on the premises comply with applicable law.

After a bench trial, the trial court entered a judgment declaring the commercial lease between Merry Homes, Inc. and Chi Hung Luu void for illegality, since the lease only authorized the operation of a nightclub or bar at the premises and Luu was unable to obtain a liquor license due to the premises' proximity to a public school.

The trial court awarded Luu $6000 for the security deposit, $25,300 in attorney's fees, and denied Merry Homes' counterclaim for unpaid rent. In nine issues, Merry Homes (1) challenges the legal and factual sufficiency of fifteen different findings of fact and conclusions of law; (2) contends the trial court erred in holding the lease void for illegality, using an admission made by a co-defendant against Merry Homes, awarding attorney's fees to Luu, and denying Merry Homes' recovery on its counterclaim; and (3) asserts that six findings of fact should be disregarded as irrelevant to the issue of enforceability of the lease. We hold that the trial court correctly determined that Luu could not legally perform under the lease, and therefore affirm the judgment of the trial court.

**Background**

In December 2004, Chi Hung Luu, his friend and business partner Luc Dao, and Raymond Yu, Merry Homes' agent, began negotiating to lease space in a new shopping center located on Bellaire Boulevard. Luu informed Yu of his desire to open a nightclub or bar at the location, and Yu responded that this particular location had good potential for that kind of business. Shortly after the initial meeting with Yu, Luu contacted Kim Marketing, an agency that specialized in obtaining liquor licenses, to discuss the requirements for such a license. The representatives of Kim Marketing informed Luu that he did not need to secure a lease before he applied for a liquor license, though Yu, as the landlord's representative, had to supply lease information on the license application. In December 2004, Luu submitted a proposal of lease terms to Merry Homes, including proposed monthly rent ranging from $7000 to $7700 for a five year lease term, a security deposit of $7000, and Luu's right

to terminate the lease with forty-five days' notice.

Over the next five months, Luu and Dao met with Yu three or four additional times. On May 20, 2005, Yu presented a copy of the lease to Luu for his review. This version of the lease differed from Luu's earlier written proposal: the security deposit and monthly rent were each $6000, and the lease included no provision allowing Luu to terminate the lease with forty-five days' notice. According to Luu and Mary McGrane, a Merry Homes representative, the parties agreed that Merry Homes would not collect rent from Luu until after Luu obtained a permit to operate the bar and completed the build-out. On May 31, 2005, before the parties executed the lease, Kim Marketing asked that Yu provide information about Merry Homes for Luu's liquor license application. According to both Luu and Dao, Yu refused to provide the necessary information for the application before Luu signed the lease on June 2, 2005.

The lease provides that Luu may use the premises only for the purpose of operating a nightclub or bar and for "no other" purpose. The lease also prohibits Luu from using the premises for "any activity that violates any applicable law, regulation, zoning ordinance, restrictive covenant, [or] governmental order" or for "any activity that violates any applicable federal, state, or local law." An additional provision requires Luu to "satisfy [himself] that the leased premises may be used as [Luu] intends by independently investigating all matters related to the use of the leased premises or Property."

On June 10, 2005, Luu submitted his liquor license application to the City of Houston. Approximately one month later, the city faxed a letter to Luu via Kim Marketing, informing him that the city denied his application since the premises is located less than 300 feet from a public school and less than 300 feet from a public hospital. The city mailed a follow-up letter on August 24, again informing Luu that it denied his application, but also suggesting that he attempt to qualify for the "restaurant exception," which would allow Luu to operate a restaurant that serves alcohol at the premises. Luu testified that immediately after he received the first denial from the City of Houston, he contacted Yu and requested a meeting to determine how to proceed under the lease. At this meeting, Luu requested the refund of $6000 of the $12,000 he had paid Merry Homes for the security deposit and first month's rent and asked to cancel the lease. Yu responded that Luu had signed the lease and was therefore committed to leasing the premises, but he should consider other options for using the space, such as a pool hall or a restaurant.

After the meeting with Yu, Luu began investigating the possibility of opening a restaurant instead of a bar. Luu testified that a restaurant required a full kitchen and thus a significantly more expensive build-out than a bar. Luu ultimately determined that opening a restaurant instead of a bar would not be financially feasible.

Merry Homes refused to refund Luu's deposit or cancel the lease. Luu sought a declaratory judgment that the lease was void since it could not be performed legally, and also asserted claims of common law and statutory fraud, negligent misrepresentation, and violations of the Deceptive Trade Practices Act. Merry Homes counterclaimed for breach of contract and sought to recover eight months' unpaid rent.

After a bench trial, the trial court declared the lease void and issued findings of fact and conclusions of law. The trial court denied recovery on Luu's four other claims and on Merry Homes' counterclaim

for unpaid rent. The trial court rested its decision that the lease was void on two grounds: (1) Section 9(a) of the lease, which restricted the use of the premises to that of a nightclub or bar, fatally conflicted with Sections 10(a)(3) and (5), which prohibited any use of the premises that violates an applicable law or regulation; and (2) Luu could not perform his contractual obligations legally, since he could not obtain a liquor license for the premises due to its proximity to a public school. The trial court awarded Luu $6000 in damages and $23,500 in attorney's fees.

## Discussion

### Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *HTS Servs.*, 190 S.W.3d at 111. When a trial court enters findings of fact and conclusions of law, we "indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). In a bench trial, the trial court judges the credibility of the witnesses, determines the weight of testimony, and resolves conflicts and inconsistencies in the testimony. *See Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied). As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

In a legal sufficiency review, we view the evidence in the light most favorable to the fact-finding, credit favorable evidence if a reasonable fact-finder could do so, and disregard contrary evidence unless a reasonable fact-finder could not. *See id.* at 827. "[F]indings of fact bind an appellate court only if the findings are supported by evidence of probative force." *Thomas v. Casale*, 924 S.W.2d 433, 437 (Tex.App.-Fort Worth 1996, writ denied); *see also Jerry v. Ky. Cent. Ins. Co.*, 836 S.W.2d 812, 815 (Tex.App.-Houston [1st Dist.] 1992, writ denied). Anything more than a scintilla of evidence is legally sufficient to support the fact-finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). In a factual sufficiency review, we view all of the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust. *See Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We review de novo a trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). If we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment. *See id.* We uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 769 (Tex. App.-Corpus Christi 2001, no pet.).

*Sufficiency of the Evidence*

■ In two issues, Merry Homes challenges thirteen findings for legal and factual sufficiency. Seven of these thirteen findings are conclusions of law. Merry Homes challenges the following conclusions:

- Sections 9(a) and Sections 10(a)(3) and (5) are in fatal conflict;
- Luu could not perform the lease legally due to the location's proximity to a school;
- Due to the fatal conflict and Luu's inability to legally perform his obligations, the lease is void;
- The trial court is not required to rule on any affirmative defenses raised by the parties;
- The trial court should render judgment only against Merry Homes and not Yu; and
- At the conclusion of the trial, the trial court erroneously stated that the lease conflict was between section 9(a) and section 13.

We do not review conclusions of law for legal sufficiency, but instead evaluate them independently to determine their correctness. *See Rayford v. State*, 16 S.W.3d 203, 210 (Tex.App.-Dallas 2000, pet. denied); *Jerry*, 836 S.W.2d at 815. A party "may not challenge a trial court's conclusions of law for factual insufficiency." *BMC Software*, 83 S.W.3d at 794. We review the other six challenged findings of fact for legal and factual sufficiency. Specifically, Merry Homes challenges the following findings:

- Luu reasonably and in good faith believed he could open a bar and did not learn otherwise until after he signed the lease;
- Yu told Luu to sign the lease before he would assist with the liquor license application;

- All parties believed Luu would open a nightclub or bar that served light refreshments or snacks but not meals;
- Luu reasonably believed he could obtain a liquor license;
- Yu's attorney admitted Luu never occupied the premises; and
- Luu informed Yu that the city denied his license application.

Luu testified that, in his initial meeting with Yu, he informed Yu that he was looking into opening a nightclub or bar, and Yu responded that the location of the premises had good potential for that particular type of business. According to Luu, Yu opined that Luu should not have a problem obtaining a liquor license because another bar stood near to the premises. Luu also stated that if Yu had not told him that he would have no problem in obtaining a license, he would not have signed the lease, indicating that Luu reasonably believed that he could obtain a liquor license. Luu further testified that, upon receiving a letter from the City of Houston denying the liquor license, approximately one month after signing the lease, he immediately called Yu and requested a meeting to determine how to proceed.

■ Yu testified that he never met with Luu and Dao regarding the denial of the liquor license, but Luu and Dao both testified that they met with Yu immediately after receiving the City's denial, and they informed him of the denial and discussed alternative lease options. Viewing the evidence in the light most favorable to the fact-findings, we hold that legally sufficient evidence exists to support the trial court's findings that (1) Luu reasonably believed he could open a bar at the leased premises and the city would approve his license application, (2) Luu did not learn that he could not open a bar at the premises until after he signed the lease, and (3) Luu met

with Yu and informed him that the city denied his liquor license.

Luu, Dao, and Yu himself each testified that Yu told Luu and Dao that he required a signed lease before he would provide the necessary information regarding Merry Homes for Luu's liquor license application. Undisputed evidence therefore supports the trial court's finding that Yu told Luu and Dao to sign the lease before he would assist in providing information for the license application. Luu additionally testified that before signing the lease, he and Dao met with Yu and Mary McGrane and discussed how the bar would operate. Luu informed Yu and McGrane that they planned on selling liquor and serving some cold food, but not cooked meals. McGrane testified that she understood that a distinction exists between a restaurant and a bar, and Merry Homes always believed that Luu would serve some food at the bar, though it was unaware of the extent of food service. According to McGrane, if she had believed that Luu would build a full kitchen for a restaurant, then she would not have prepared the lease to read that Luu could use the premises to operate a nightclub or bar and for "no other" purpose. We hold that legally sufficient evidence exists to support the trial court's finding that the parties thought that the premises would be used for a nightclub or bar.

In the final finding of fact challenged by Merry Homes, the trial court found that, in Luu's Exhibit 15, Yu's attorney admitted that Luu never occupied the premises at any time material to the lawsuit. Exhibit 15 is a letter from Yu's attorney to Luu, dated January 19, 2006, and states the following: "You are the tenant of the referenced property under a written lease dated June 2, 2005. You still have not occupied the premises. Merry Homes, Inc., is concerned about the status

of this lease." We hold that this letter is legally sufficient evidence that Yu's attorney admitted that Luu never occupied the premises. We hold that legally sufficient evidence supports each of the challenged findings of fact.

Merry Homes also challenges the six findings of fact for factual insufficiency. This contention, however, is unavailing. Merry Homes does not point to any specific evidence in the record that contradicts the trial court's findings, and our review of the record indicates that the findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176. We therefore hold that factually sufficient evidence supports the trial court's findings of fact.

*Legality of the Lease*

Merry Homes contends that the trial court erred in determining that the lease was void because Luu could not legally perform it. The Texas Supreme Court previously has held that a contract to fulfill an obligation which cannot be performed without violating the law contravenes public policy and is void. *See Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947); *Gupta v. E. Idaho Tumor Inst., Inc.,* 140 S.W.3d 747, 751 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). The purpose behind this principle is to benefit and protect the public, not to punish or protect a party to the contract. *See Villanueva v. Gonzalez,* 123 S.W.3d 461, 464 (Tex.App.-San Antonio, 2003, no pet.). If the illegality does not appear on the contract's face, a court will not find it void unless facts showing the illegality are before the court. *See Lewis,* 199 S.W.2d at 149. If the parties could perform the contract in a legal manner, the contract is not void merely because the parties may have performed the contract in an illegal manner or committed illegal

acts in carrying out the contract. *See Denson v. Dallas County Credit Union,* 262 S.W.3d 846, 852 (Tex.App.-Dallas 2008, no pet.); *Carras v. Birge,* 211 S.W.2d 998, 1002 (Tex.Civ.App.-Dallas 1948, writ ref'd n.r.e.) ("[I]f any ordinance existed absolutely prohibiting the performance by either or both of the parties to the contract, and no method is therein provided whereby the contract could be performed without violation of the ordinance, then, and only then, could the contract be held void."). But, we must not enforce an illegal contract, "particularly where the contract involves the doing of an act prohibited by statutes intended for the protection of the public health and welfare." *Peniche v. Aeroméxico,* 580 S.W.2d 152, 155 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ).

■ We decide whether a contract violates a statute by "looking at the specific facts of the case and deciding the intention of the parties in executing the contract." *Id.* at 156. In *Peniche,* we refused to enforce a contract for chauffeur services because Peniche lacked a chauffeur's license in violation of Article 6687b of the Revised Civil Statutes. *See id.* We noted that "[t]here can be little doubt that Article 6687b ... was a valid exercise of a state police power for the purpose of protecting the safety of the general public and that any contract in derogation of such article would be illegal." *Id.; see also Denson,* 262 S.W.3d at 854 ("[I]n situations where public policy concerns have led to a governmentally supervised statutory licensing scheme, courts have consistently held the unlawful and unlicensed participation in such regulated businesses cannot form the basis of recovery."); *McCreary v. Bay Area Bank & Trust,* 68 S.W.3d 727, 733 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd) ("Where a contract is made in violation of a statute, it is illegal and void.").

■ Here, the Texas Alcoholic Beverages Code authorizes counties and cities to adopt regulations prohibiting the sale of alcohol within 300 feet of a public school. *See* TEX. ALCO. BEV.CODE ANN. § 109.33(a) (Vernon 2007). The City of Houston has adopted such a regulation. *See* Houston, Tex., Code of Ordinances ch. 3, art. I, § 3–2(a) (1968). The Texas Legislature and the City of Houston enacted this statute and ordinance, respectively, to protect the health and safety of the general public. *See* TEX. ALCO. BEV.CODE ANN. § 1.03 (Vernon 2007) ("This code is an exercise of the police power of the state for the protection of the welfare, health, peace, temperance, and safety of the people of the state."). Any contract or lease that requires a violation of this statute and ordinance is void. *See Peniche,* 580 S.W.2d at 156. Although the Houston Code of Ordinances includes a "restaurant exception" to the general prohibition of selling alcohol within 300 feet of a public school, Houston, Tex., Code of Ordinances ch. 3, art. I, § 3–2(g) (1968), the trial court explicitly found that the lease required Luu to operate a "nightclub/bar" on the premises, and not a restaurant, and that the parties never intended to operate a restaurant.

Although the lease, on its face, does not require violation of the law, the only permissible use of the premises under the lease's terms is impossible and illegal, given the location of the premises relative to a school. As Luu cannot obtain a liquor license and therefore cannot perform under the lease without violating the statute and ordinance, the trial court properly determined that this lease is void for illegality.

Merry Homes relies on *Houston Ice & Brewing Co. v. Keenan* for the proposition that Luu unconditionally bound himself to perform under the lease, and thus the City of Houston's refusal to grant a liquor li-

cense should not excuse his performance, especially because the City's denial is a contingency that Luu should have anticipated. *See* 99 Tex. 79, 88 S.W. 197 (1905). The lease in *Keenan* limited the use of the premises to the operation of a saloon in Ellis County. *Id.* at 200. At the time the parties executed the lease, the Texas Legislature had enacted a "local option statute," which allowed individual counties to prohibit the sale of alcohol within the county. *Id.* Ellis County did not adopt such a prohibition until after execution of the lease. *Id.* The Texas Supreme Court adopted the reasoning of the Dallas Court of Appeals in holding that the lease was legal:

> [W]hen a party voluntarily undertakes and by contract binds himself to do an act or thing, without qualification, and performance thereof becomes impossible by some contingency which should have been anticipated and provided against in the contract, the nonperformance will not be excused. In such case the party's failure to exempt himself from responsibility in the event of the happening of the contingency will be attributable to his own folly and he will be held to make good his contract.

*Id.* at 198. Relying on *Keenan*, Merry Homes maintains that the lease is not void for illegality because the lease required Luu to "satisfy" himself that the premises could be used as he intended.

We agree with Luu that *Keenan*, which involves a supervening illegality after execution of the lease, is factually distinguishable.[1] The Dallas Court of Appeals noted that the permissible use in the *Keenan* lease was "entirely legal" when the lease contract was executed. *Id.* Here, the City of Houston enacted the ordinance prohibiting the sale of alcohol within 300 feet of a public school prior to execution of Luu's lease. Chapter 3 of the Houston Code of Ordinances includes no provisions or mechanisms for obtaining a variance or exemption from the ordinance's prohibition. *See* Houston, Tex., Code of Ordinances ch. 3, art. I (1968). The City's August 24, 2005, letter to Luu suggests that Luu may qualify for a license under the "restaurant exception," indicating that turning the leased space into a restaurant is the only way to obtain a liquor license for this premises. Unlike the use of the premises in *Keenan*, Luu could never perform the only permissible use under his lease that the trial court found, operating a nightclub or bar, without violating the law.

Merry Homes further observes that a majority of jurisdictions hold that a lease remains valid if the tenant cannot obtain the permit or license necessary to use the premises in the manner required by the lease. Merry Homes relies on a reporter's

---

1. Even if *Keenan* is applicable to this case involving a pre-existing illegality, as opposed to a supervening illegality, we note that the holding in *Keenan* relied heavily on the fact that Ellis County's exercise of its option to prohibit the sale of alcohol was highly foreseeable at the time Keenan entered into the lease agreement and, as a result, Keenan should have protected himself by insisting on a contingency clause relieving him of his lease obligations if the county later adopted prohibition. *See Houston Ice & Brewing Co. v. Keenan*, 99 Tex. 79, 88 S.W. 197, 198 (1905). The Texas Supreme Court later ob- served that "[t]he foreseeability factor has, however, gradually decreased in importance," and a party may still be discharged from performance even if the supervening event was reasonably foreseeable. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 955 (Tex.1992). Under the more recent authority in *Centex*, Luu's failure to ensure that the lease contained a contingency clause excusing his performance upon denial of a liquor license, even if the denial of the license was reasonably foreseeable, does not require enforcement of the lease.

note to section 9.2 of the Restatement (Second) of Property, which states that "[i]t is well supported that a lease for a purpose contrary to the *applicable zoning laws* is not a lease for an illegal purpose when the purpose may become permissible if a license, permit, or variance is obtained." RESTATEMENT (SECOND) OF PROP.: LANDLORD & TENANT § 9.2 reporter's n. 3 (1977) (emphasis added). Courts in other jurisdictions have noted that the zoning scenario is unique since the governing authority "frequently" grants variances from zoning regulations. *See Warshawsky v. Am. Auto. Prods. Co.*, 12 Ill.App.2d 178, 138 N.E.2d 816, 819 (1956); *see also Pa. State Shopping Plazas, Inc. v. Olive*, 202 Va. 862, 120 S.E.2d 372, 375 (1961) ("There is authority that the obligor in a contract is excused from its performance when to perform would violate zoning regulations, but the rule is not applicable where, as in the present case, the zoning laws permit a variance in the regulations and some discretion may be exercised by the proper authorities in granting a permit for a proposed use."). In the only Texas case to address this issue, the Dallas Court of Appeals observed that a zoning ordinance would not automatically establish the illegality of the contract "so long as there existed a method, procedure, or course of action making it possible for a permit to issue within the time as contemplated by the contracting parties." *Carras*, 211 S.W.2d at 1002. Unlike some zoning regulations, the ordinance here does not provide a mechanism by which a party can obtain a variance or exemption.

This case, therefore, is governed by section 9.1(1) of the Restatement (Second) of Property: "If the parties to the lease both intend that the leased property is to be used for a purpose illegal under all circumstances, the lease is unenforceable against the tenant." RESTATEMENT (SECOND) OF PROP.: LANDLORD & TENANT § 9.1(1); *see*

*also id.* § 12.4 (stating lease is unenforceable against landlord in same situation). Because the City of Houston does not grant variances to the application of this ordinance, the intended use of this property as a nightclub or bar "is illegal no matter by whom it is made." *See id.* § 9.1 cmt. a; *see also id.* § 9.2 reporter's n. 6 ("Where the zoning law allows no variance, it has been held that a lease for a purpose prohibited by that law is voidable at the tenant's option upon ascertaining that the use is absolutely prohibited."); *id.* cmt. d ("When the use intended by the parties is illegal unless a permit, license or variance is obtained, the tenant may be justified in concluding that it would be impossible to obtain a necessary permit, license or variance."). Although Merry Homes is correct that operating a nightclub or bar is not illegal in itself, operation of a nightclub or bar at this particular premises is illegal regardless of who operates it. Because the only authorized use of this particular premises is illegal under all circumstances, this lease is unenforceable against either Luu or Merry Homes.

Merry Homes cites to *Gaston v. Gordon*, a 1911 case from the Massachusetts Supreme Court, for the proposition that the trial court erred in holding the lease void since Luu failed to obtain the liquor license needed to legally operate his business. 208 Mass. 265, 94 N.E. 307 (1911). The *Gaston* court noted, however, that "[t]his business when licensed according to the provisions of the statute is recognized by law as legal. It was possible in the nature of things lawfully to comply with all the stipulations of the lease." *Id.* Here, it was impossible for Luu to satisfy the requirements of the ordinance and simultaneously comply with the terms of the lease because the lease agreement fixed the premises in a locale where no bar or nightclub could operate.

■ Finally, Merry Homes contends that the trial court's decision to declare the lease void cannot be affirmed on the basis of impossibility of performance. Merry Homes relies on section 10(c) of the lease, which provides that Luu will satisfy himself that the premises can be used for the intended purposes, and thus is bound to perform.[2] *See* Restatement (Second) of Contracts § 261 cmt. a (1981). We first note that section 261 of the Restatement only applies to supervening events that render performance impracticable, not pre-existing conditions and events. *See id.* ("Cases of existing, as opposed to supervening, impracticability are governed by § 266 rather than this Section."). The trial court found that the ordinance prohibiting the sale of alcohol on Luu's premises which renders Luu's performance illegal and impracticable existed before the parties executed the lease, and therefore section 266 of the Restatement applies. Section 266(1) provides:

> Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.

*See id.* § 266(1). The last clause of section 266 provides that a party may agree to perform despite the existing impracticability. *See id.* cmt. b. Comment a to section 266 notes that "the rules on agreements unenforceable on grounds of public policy stated in Chapter 8 will also apply. To the extent that the latter bar relief for reasons based on public policy, they are controlling." *See id.* cmt. a.

■ We have repeatedly noted that contracts to perform an act in violation of a statute are void and contrary to public policy. *See McCreary,* 68 S.W.3d at 733 ("Where a contract is made in violation of a statute, it is illegal and void."); *Peniche,* 580 S.W.2d at 155 (holding that when contract requires performance of act violating statute that protects public health and welfare it is our duty to "at once decline to give [the contract] any validity"); *see also In re Kasschau,* 11 S.W.3d 305, 312 (Tex. App.-Houston [14th Dist.] 1999, orig. proceeding) ("A contract to do a thing which cannot be performed without violation of the law violates public policy and is void."). Although section 266 excuses performance as impracticable based upon a pre-existing condition "of which [the party] has no reason to know," we previously held that "[a] contract to do a thing which cannot be performed without a violation of the law is void, *whether the parties knew the law or not.*" *Peniche,* 580 S.W.2d at 156 (citing *Tex. Employers' Ins. Ass'n v. Tabor,* 283 S.W. 779, 780 (Tex. Comm'n App.1926, judgm't adopted)) (emphasis added); *see also Centex Corp. v. Dalton,* 840 S.W.2d 952, 955 (Tex.1992) ("The updated Restate-

---

2. Merry Homes points out that section 9.2 of the Restatement (Second) of Property, which allows a tenant to terminate a lease if the intended use of the property later becomes illegal, begins by stating "[e]xcept to the extent the parties to a lease validly agree otherwise," and contends that section 10(c) of the lease brings this case within the exception to section 9.2. *See* Restatement (Second) of Prop.: Landlord & Tenant § 9.2 (1977). Comment c to section 9.2 describes examples of "valid agreements otherwise," including agreements that the lease will automatically terminate if the intended, but not sole permissible, use under the lease becomes illegal, and agreements that shift responsibility to the landlord to obtain a required license, permit or variance. *See id.* cmt. c. Comment c does not list an agreement such as section 10(c) of this lease, which would require Luu to continue his rental obligation even though his only permissible use of the premises is illegal, as a "valid agreement otherwise." *See id.*

ment (Second) of Contracts § 261 omitted [the "no reason to anticipate"] requirement, explaining that many factors may excuse a failure to deal with contingencies, and that even if the event was reasonably foreseeable, *or even foreseen,* the contracting party may still be discharged.") (emphasis added). The Texas Supreme Court "has long recognized Texas' strong public policy in favor of preserving the freedom of contract." *Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653, 664 (Tex.2008). Freedom of contract, however, is not unlimited: "As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *Id.* (quoting *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 129 & n. 11 (Tex.2004)); *see also Sonny Arnold, Inc. v. Sentry Sav. Ass'n,* 633 S.W.2d 811, 815 (Tex.1982). Merry Homes cannot indirectly receive benefits—monthly rental payments—from what the law says it cannot do directly. *See Trammel Crow Co. No. 60 v. Harkinson,* 944 S.W.2d 631, 634 (Tex.1997). Following our court's prior precedents, we hold that the trial court correctly determined that this lease is illegal and void as against public policy because performance of Luu's lease obligations would violate an ordinance directed toward protecting the public health and welfare.

*Luu's Attorney's Fees*

■■■■■ In its seventh issue, Merry Homes contends that the trial court erred in awarding attorney's fees to Luu because the court erroneously determined that the lease was void; therefore, the award of attorney's fees was, as a matter of law, neither equitable nor just. In suits brought under the Declaratory Judgment Act, attorney's fees awards are within "the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are mat-

ters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Aside from stating in a heading that "[t]he award of attorney's fees was error because, as a matter of law, the amounts awarded were not equitable and just," Merry Homes cites to no authority, nor to any portions of the record that indicate that the trial court's award of $23,500 to Luu for attorney's fees is inequitable or unjust. *See* TEX.R.APP. P. 38.1(i). Luu presented evidence at trial that he incurred $32,000 in attorney's fees. Merry Homes' attorney introduced evidence that Merry Homes incurred $6700 in fees. Merry Homes, neither at trial nor on appeal, presented any evidence suggesting that this amount of attorney's fees was unreasonable, unnecessary, inequitable, or unjust. Accordingly, we hold that the trial court correctly awarded $23,500 in attorney's fees to Luu.

*Disregarding Particular Findings of Fact*

■■■■■ In issue four, Merry Homes contends that the trial court erred in making certain findings of fact because those findings are not relevant to the issue of the lease's enforceability and do not support the trial court's judgment. A trial court's findings of fact are binding unless challenged on appeal, and we may not disregard findings of fact unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *El Puerto de Liverpool v. Servi Mundo Llantero S.A. de C.V.,* 82 S.W.3d 622, 628 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.); *Perna v. Hogan,* 162 S.W.3d 648, 656 (Tex.App.-Houston [14th Dist.] 2005, no pet.). As discussed above, we held that both legally and factually sufficient evidence supports the trial court's findings of fact. Whether findings

are irrelevant or superfluous to the trial court's judgment is not a valid basis for disregarding such findings on appeal. *See also Speer v. Presbyterian Children's Home,* 847 S.W.2d 227, 233 & n. 4 (Tex. 1993) (Gonzalez, J., concurring) ("Under our rules of procedure, an appellate court cannot disregard findings of fact—the appellate court can only deviate from such findings if there is no evidence to support the findings."). Even disregarding the challenged findings, sufficient findings of fact remain to support the trial court's determination that the lease required a nightclub or bar and nothing else. Merry Homes cannot show that any error committed by the trial court in making irrelevant findings either probably caused the rendition of an improper judgment or prevented Merry Homes from properly presenting its case on appeal. *See* Tex.R.App. P. 44.1(a).

Merry Homes further contends that the trial court erred in using Yu's admission that the lease could not be performed legally against Merry Homes. A matter admitted pursuant to a request for admission is "conclusively established as to the party making the admission." Tex.R. Civ. P. 198.3. Even without Yu's admission, the facts support the trial court's conclusion that Luu could not operate a business in the leased space consistent with both the City of Houston ordinance and the terms of the lease limiting the use of the premises exclusively to a nightclub or bar. Merry Homes thus failed to establish that any use of this admission against Merry Homes constitutes harmful error. *See* Tex.R.App. P. 44.1(a).

### Conclusion

We hold that the trial court correctly determined that the lease was void because Luu could not perform his obligation under the lease to avoid violating a City of Houston ordinance. We further hold that the trial court's award of $23,500 in attorney's fees to Luu was not inequitable or unjust. We therefore affirm the judgment of the trial court.