Opinion issued July 2, 2015



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00583-CV

_____

**SHAWN IBRAHIM, INC., MAHMOOD AKTAR, AND MUHAMMAD AMIN, Appellants**

**V.**

**SUNCOAST ENVIRONMENTAL AND CONSTRUCTION, INC., SUNNYLAND DEVELOPMENT, INC., AJAZ R. SIDDIQUI, AND NAJEEB R. SIDDIQUI, Appellees**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-02593**

---

## MEMORANDUM OPINION ON REHEARING

This is a suit to collect on an unpaid promissory note. Shawn Ibrahim, Inc.,

and its guarantors, Mahmood Aktar and Muhammed Amin, appeal from a bench

trial, in which the trial court found that they had defaulted on a $200,000 note in favor of Sunnyland Development, Inc. The trial court found for Sunnyland, awarding it $453,667.59 on the note and attorney's fees of $63,591.79. On appeal, Ibrahim, Aktar, and Amin contend that the trial court (1) misinterpreted a standby creditor's agreement that precludes judicial enforcement of the note, thus barring a judgment against them; (2) miscalculated the interest rate and offsets in determining the amount due; and (3) erred in declining to find merit in their usury counterclaim. After we issued our opinion in this case, Ibrahim, Aktar, and Amin moved for rehearing. We deny the motion for rehearing; we withdraw our opinion and judgment and issue this opinion and judgment in their stead. We affirm.

## Background

In 2004, Ibrahim, whose president is Aktar, contracted with Suncoast Environmental and Construction, Inc. for construction of a convenience store, truck stop, and restaurant. Suncoast was the general contractor. Sunnyland was the developer and loaned the money to Ibrahim for the project. Ajaz and Najeeb Siddiqui together own Suncoast. Ajaz solely owns Sunnyland, and he is the president of Sunnyland and Suncoast.

In 2005, Ibrahim executed a promissory note to Sunnyland for $200,000 and signed a deed of trust. Aktar and Amin personally guaranteed the note. The note required Ibrahim to make monthly payments of $2,930.04, "beginning on July 1,

2

2006 and continuing until the unpaid principal and accrued, unpaid interest have been paid in full." Payments would be applied to accrued interest before reducing principal. The note provided for two interest rates: a general "annual interest rate" of 9%, but one of 18% on "matured, unpaid amounts." The promissory note did not explicitly provide a date on which interest would begin to accrue. It also did not expressly specify whether the interest rates were simple or compound interest rates, other than to describe them as "annual" rates.

In the event of a default, the note required Sunnyland to give Ibrahim written notice of default and 10 days to cure it. The deed of trust provided for acceleration of payment on the principal balance and earned interest if Ibrahim defaulted on the note and did not cure the default within 10 days after receiving notice. The note also contained a clause regarding potential usury, requiring that any interest in excess of the maximum rate allowed by law would be credited against the principal amount owed or refunded.

Ibrahim failed to repay the note as agreed. Instead of making monthly payments beginning in July 2006, over the next four years, Ibrahim made seven payments: $10,000 in August 2008; $12,000 in September 2008; $10,000 in February 2010; $10,000 in June 2010; $5,000 in August 2010; $5,000 in September 2010; and $5,000 in October 2010. An eighth payment of $25,000, paid in June 2006, is contested on appeal.

In January 2008, the Houston-Galveston Area Local Development Corporation ("HGAC"), a community development corporation, and Sunnyland signed a standby creditor's agreement benefitting Ibrahim and its guarantors. In the standby agreement, Sunnyland agreed to take no action to enforce the note against Ibrahim or its guarantors without the written consent from HGAC, subject to certain exceptions.

*Course of Proceedings*

Initially, Ibrahim sued Suncoast Environmental and Construction, Inc., Sunnyland Development, Inc., and the Siddiquis for breach of their construction contract, among numerous other claims. Sunnyland and the Siddiquis counterclaimed against Ibrahim, Aktar, and Amin for the amounts due on the note. The construction claims settled, leaving the note and the usury claims for trial.

After a bench trial, the trial court rendered judgment in favor of Sunnyland. It submitted findings of fact and conclusions of law. Relevant to this appeal, the trial court found:

- The Note referred to the Deed of Trust and the Deed of Trust had an acceleration clause.

- Shawn Ibrahim, Inc. owes Sunnyland as of March 1, 2014 . . . $453,667.59 . . . on the $200,000 note.

- Akhtar and Amin owe Sunnyland as of March 2014 . . . $453,667.59 . . . as absolute guarantors.

4

- The $200,000 installment loan calls for an annual rate of 9%, which started to accrue when the loan was made. All installments that remained unpaid were to earn interest at the annual rate of 18%.

- The requisite 10-day demand notice was sent by certified mail in January 2010 to Counter-Defendants.

- The unpaid interest related to unpaid installments become principal.

- Although the Standby Creditor Agreement prohibited payment from Ibrahim, it does not prohibit payment from third parties and, in this case, the absolute guarantors of the Note, Akhtar and Amin.

- Sunnyland did not demand usurious interest.

- Sunnyland is excused from any [usury] penalties.

- Sunnyland's expert correctly calculated the note by giving effect to all of the terms of the note.

## Discussion

At the outset, we note that the Ibrahim and the guarantors provided only limited excerpts from the trial court reporter's record. The Texas Rules of Appellate Procedure provide:

> If the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues. . . . The appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues. This presumption applies even if the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in that point or issue.

TEX. R. APP. P. 34.6(c). If a party fails to submit his statement of points or issues, it creates the presumption that the omitted portions of the record support the trial court's findings. *Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (citing *Richards v. Schion*, 969 S.W.2d 131, 133 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Ibrahim did not notify this court of, or include in the record on appeal, its request for a partial reporter's record made to the court reporter in the trial court. Nor did it designate its accompanying statement of issues filed in the trial court as part of the appellate record. Nor did it mention either the partial designation or its accompanying statement of issues in its appellate briefing. For the first time on rehearing, it references its request for a partial reporter's record and attaches the request and the statement of issues filed in the trial court to its motion for rehearing. Although its inclusion and notification is untimely, we nonetheless consider its argument on rehearing as a request for consideration of a partial record limited to the points of error raised on appeal.

*Standard of review and applicable law*

In an appeal from a bench trial, we review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). The trial court judges the credibility of the witnesses and resolves conflicts in the testimony. *Merry*

6

*Homes, Inc. v. Chi Hung Luu,* 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied)).  If the evidence falls "within [the] zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

In a legal-sufficiency review, we view the evidence in the light most favorable to the fact-finding, crediting favorable evidence if a reasonable fact-finder could do so, and disregarding contrary evidence unless a reasonable fact-finder could not.  *Id.* at 822, 827.  In a factual sufficiency review, we view all of the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust.  *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We review de novo a trial court's conclusions of law.  *Merry Homes,* 312 S.W.3d at 943 (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).  We uphold a conclusion of law if the judgment can be sustained on any legal theory supported by the evidence.  *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 769 (Tex. App.—Corpus Christi 2001, no pet.).

We review a trial court's construction of an unambiguous contract de novo. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.

1999).  Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.  *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006).  Contract terms will be given their plain, ordinary, and generally accepted meanings, unless the contract indicates a technical or different sense.  *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005).

"A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation."  *Chapman v. Abbot, 251 S.W.3d 612, 617 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996)).*  We determine whether a contract is ambiguous by looking at the contract as a whole, considering the circumstances present when the parties entered the contract.  *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 746 (Tex. 2003).  When a contract contains an ambiguity, its interpretation becomes a fact issue.  *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983); *Quality Infusion Care, Inc. v. Health Care Serv. Corp.,* 224 S.W.3d 369, 379 (Tex. App. Houston [1st Dist.] 2006, no pet.).  "The trier of fact must resolve the ambiguity by determining the true intent of the parties."  *Chapman, 251 S.W.3d at 617 (citing Coker,* 650 S.W.2d at 394–95).

## I.     Effect of the Standby Creditor Agreement

Ibrahim first contends that Sunnyland did not meet the conditions precedent required by the standby creditor's agreement before it sued, which in turn bars it from enforcing the note.  Ibrahim further contends that Sunnyland had the burden to show conditions precedent that the HGAC loan was satisfied and that the HGAC gave its written consent for Sunnyland to enforce the note.

Sunnyland responds that Ibrahim did not plead an affirmative defense that the standby creditor agreement precluded enforcement on the note.  *See* TEX. R. CIV. P. 94.  But the parties tried the issue by consent.  The standby creditor agreement was introduced at trial and discussed multiple times during witness testimony, without an objection from Sunnyland; thus, Sunnyland's challenge to the pleadings was waived.  *See RE/MAX of Tex., Inc. v. Katar Corp.,* 961 S.W.2d 324, 327 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) ("If an affirmative defense is not plead or tried by consent, it is waived."); *Moore v. Altra Energy Techs., Inc.,* 321 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint.").

9

Although Ibrahim proffered evidence of the standby agreement, it did not provide evidence about whether the HGAC agreement had been breached or whether HGAC had consented to Sunnyland's suit. Nor, in its request for a partial reporter's record, did Ibrahim identify in its statement of the issues any challenge to Sunnyland's compliance with the agreement. With respect to the standby agreement, in the statement of issues, Ibrahim claims that the trial court erred in (1) "rewr[iting] the unambiguous [standby] agreement;" and (2) finding "that the Standby Creditor's Agreement was legally ineffective." Both of these claims challenges whether the trial court enforced the agreement at all—neither addresses Ibrahim's contention in its briefing that Sunnyland breached the standby agreement with HGAC. In it motion for rehearing, Ibrahim characterizes its challenge as a question of law, for which no additional materials other than the agreement are necessary. Its contention that Sunnyland breached the agreement by failing to comply with conditions precedent, however, is not purely a legal interpretation, but instead requires an examination of the acts or omissions that constitute the breaching conduct.

Without a party's submission of a statement of issues, a presumption is created that the omitted portions of the record support the trial court's finding. *See Bennett*, 96 S.W.3d at 229. Ibrahim did not raise a challenge regarding Sunnyland's failure to comply with standby agreement in its statement of issues

and request for a partial reporter's record. Because the reporter's record is a partial record, we presume that the trial court heard evidence to support its judgment that the standby agreement does not bar a recovery on the note due to any failure to comply with a condition precedent. *See Bennett*, 96 S.W.3d at 229–30 ("The court of appeals was correct in holding that, absent a complete record on appeal, it must presume the omitted items supported the trial court's judgment." (quoting *Gallagher v. Fire Ins. Exchange,* 950 S.W.2d 370, 370–71 (Tex. 1997)).

## II.    Amount Owed on the Note

Ibrahim contends that the trial court erred in its calculation of principal and interest due on the note. Specifically, Ibrahim argues that the court (1) failed as a matter of law to credit a $25,000 payment, (2) erred in compounding interest annually on the note, (3) erred in determining the date on which interest began to accrue, (4) erred in using an 18% interest rate on some unpaid installments, (5) and erred in allowing acceleration of the note. We address each in turn.

### 1.  The $25,000 payment

The trial court did not credit Ibrahim for a payment of $25,000 as an offset. The trial court heard conflicting evidence about the payment. Ibrahim proffered a copy of the check, and Aktar testified that the payment was intended as a credit on the note. Siddiqui testified that the $25,000 check reimbursed a construction cost and was not a payment on the $200,000 note. The other checks that Sunnyland

11

accepted for the repayment of the note referenced the $200,000 note, or stated "loan payment" on the check. We reject Ibrahim's challenge for two reasons. First, the trial judge determines the credibility of the witnesses and could have credited Siddiqui's testimony over Aktar's. *See Merry Homes,* 312 S.W.3d at 943. We will not substitute our judgment for that of the fact-finder if the evidence falls within the zone of reasonable disagreement. *See Keller*, 168 S.W.3d at 822. Second, we have an incomplete record on appeal. *See Bennett*, 96 S.W.3d at 229–30. Accordingly, we hold that sufficient evidence supports the trial court's finding that the $25,000 payment did not partially reimburse Sunnyland on the $200,000 note. *See Keller*, 168 S.W.3d at 822; *Lyles*, 825 S.W.2d at 493.

## 2. Compound interest

Next, Ibrahim contends that the trial court erred in finding that the note provided for annual compound interest. The note provides for an "annual interest rate." Ibrahim argues that public policy supports a default simple interest rate and relies on *William C. Dear & Assocs. v. Plastronics, Inc.,* 913 S.W.2d 251, 254 (Tex. App.—Amarillo 1996, writ denied), and *Bothwell v. Farmers' & Merchants' State Bank & Trust Co.*, 30 S.W.2d 289, 291 (Tex. 1930), to argue that the Legislature intended to disallow compounding when parties to an agreement have not otherwise agreed.

12

These cases are inapplicable to the facts presented. In *Bothwell*, the court determined that the parties could agree to compound interest. *Bothwell*, 30 S.W.2d at 291. In *Dear*, the parties had not agreed to an interest rate, and the court found that the civil statute provided for simple interest at 6% in the absence of an agreed–upon rate. *Dear,* 913 S.W.2d at 253–54 (citing TEX. REV. CIV. STAT. ANN. art. 5069–1.03 (Vernon 1987)). Unlike the parties in *Dear*, here the parties agreed to an interest rate but dispute the meaning of their agreement.

The trial court thus heard competing testimony about the parties' intended meaning of "annual" interest rate. Sunnyland's witness, M. Harris, testified that the Sunnyland note contemplated annual compound interest, as the commercially acceptable practice. In contrast, Ibrahim's expert, M. Manoloff, testified that the note provided for simple interest, as a matter of default. The testimony at trial provided legally sufficient evidence for the trial court to determine that the parties intended that interest on the note be compounded annually, because "annual interest rate" could be interpreted as interest rate compounded annually in light of the testimony that the trial court heard on the issue. *City of Keller*, 168 S.W.3d at 822, 827.

### 3. Accrual

Ibrahim next contends that the trial court erred in determining that interest accrued from the date the parties executed the note, rather than the date of first

payment. The note does not provide a date on which interest will begin to accrue. When a contract contains an ambiguity, the trier of fact must resolve it by determining the true intent of the parties. *Coker,* 650 S.W.2d at 394; *Chapman, 251 S.W.3d at 617; Quality Infusion Care,* 224 S.W.3d at 379. The trial court heard conflicting testimony on this issue as well. Manoloff testified that interest accrued beginning on July 1, 2006, the first payment due date. Sunnyland's witness, M. Harris, testified that interest began accruing on the date the parties signed the note, because the borrower had received the money, and nothing in the contract stated that the time period before the first payment date was an interest-free period. Because we defer to the trial court's resolution of conflicts in the testimony, we find that sufficient evidence supported the trial court's finding that interest began to accrue when the parties signed the note. *See Keller*, 168 S.W.3d at 822; *Merry Homes, 312 S.W.3d at 943*.

### 4. Maturity date

Ibrahim next argues that the trial court erred in using an 18% interest rate on unpaid installments before July 1, 2014. The note provides that an 18% interest rate will be charged on "matured, unpaid amounts," signifying more than one amount. Harris interpreted "mature" to mean "due for payment." Therefore, she used an 18% interest rate on the monthly amounts Ibrahim did not pay by the due dates, as they qualified as "matured, unpaid amounts." In contrast, Manoloff

14

testified that, because the maturity date on the note would not occur until July 2014, and the note provided for an 18% "annual interest rate on matured, unpaid amounts," the unpaid monthly amounts would not accrue 18% interest until July 2014. We hold that there is sufficient evidence supporting the trial court's judgment that 18% interest accrued on unpaid, monthly installments; it was in the trial court's province to resolve conflicts in the testimony. *See Keller*, 168 S.W.3d at 822; *Merry Homes, 312 S.W.3d at 943*.

### 5. Acceleration of the Note

Ibrahim last contends that the trial court erred in allowing acceleration of the note without notice. Though the record does not contain a notice of default, Ajaz Siddiqui testified that Sunnyland sent notice of the default in January 2010. We hold that some evidence supports the trial court's finding that Sunnyland sent notice of the default. *Merry Homes, 312 S.W.3d at 943*.

### III. Usury

Finally, Ibrahim challenges the court's finding of fact that Sunnyland did not demand or intend to collect usurious interest. Section 305.001 of the Texas Finance Code imposes liability on a party who contracts for, charges, or receives interest that is greater than the amount authorized by law. TEX. FIN. CODE ANN. § 305.001(a) (West 2013). Here, the parties agree that the maximum amount that may be charged by law is 18%. *See id.* § 303.009.

"The essential elements of a usurious transaction are '(1) a loan of money, (2) an absolute obligation to repay the principal, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower.'" *Anglo–Dutch Petroleum Int'l, Inc. v. Haskell,* 193 S.W.3d 87, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994)). When construing a contract in a usury claim, we presume the parties intended a nonusurious contract. *Id.* "Interest on past due interest is not usurious." *Shoberg v. Shoberg*, 830 S.W.2d 149, 153 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (citing *Bothwell*, 30 S.W.2d at 291).

Ibrahim relies on Manoloff's calculations to claim usury, but the trial court rejected Manoloff's interpretation of the note's terms in its findings. Harris testified that Manoloff assumed a simple interest rate to reach his conclusion. She noted the first demand letter demanded a sum that would charge a rate of approximately 18.3%. But Sunnyland then corrected the requested amount and sent a second demand letter with an interest rate that was less than 18%, the maximum legal rate. Ibrahim responds that Sunnyland produced no evidence that accidental error caused the first usurious interest demand. However, Ajaz testified that the amount was an accidental error that it corrected in the second demand letter after consulting a banking expert. Sunnyland sent both demand letters before

Ibrahim alleged a claim for usury. We hold that sufficient evidence supports the trial court's finding that Sunnyland did not charge interest at a usurious rate and corrected its accidental error. *See* TEX. FIN. CODE ANN. § 305.101 ("A creditor is not subject to penalty under this chapter for any usurious interest that results from an accidental and bona fide error."); *Keller*, 168 S.W.3d at 822; *Merry Homes, 312 S.W.3d at 943*.

## Conclusion

We hold that sufficient evidence supports the trial court's findings. We therefore affirm the judgment of the trial court. The motion for rehearing is denied.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.